2025-1291

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CHANDAN STEEL LIMITED,
*Plaintiff-Appellant*

v.

UNITED STATES,
*Defendant-Appellee*

Appeal from the United States Court of International Trade in
Case No. 1:21-cv-00540-TCS, Senior Judge Timothy C. Stanceu

**REPLY BRIEF OF
PLAINTIFF-APPELLANT CHANDAN STEEL LIMITED**

Jeremy W. Dutra
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 626-6237
jeremy.dutra@squirepb.com

*Counsel for Chandan Steel Limited*

Dated: June 4, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2025-1291 |
| **Short Case Caption** | Chandan Steel Ltd. v. US |
| **Filing Party/Entity** | Chandan Steel Limited |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: May 20, 2025

Signature: /s/ Jeremy William Dutra

Name: Jeremy William Dutra

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Chandan Steel Limited | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Peter J. Koenig<br>Squire Patton Boggs (US) LLP | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

I.   ARGUMENT .................................................................................................1

    A.   Substantial evidence does not support Commerce's resort to facts available. ......................................................................................1

        1.   The absence of window sales for small diameter flanges does not justify application of total facts otherwise available. ..................................................................................1

        2.   Alleged cost reporting issues do not warrant affirmance. ..........7

    B.   Commerce's use of an adverse inference is not supported by substantial evidence and is not in accordance with law. .....................10

    C.   Commerce's use of a rate from a prior segment of the proceeding is not supported by substantial evidence and is not in accordance with law. ....................................................................13

II.  CONCLUSION ...........................................................................................16

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Almond Bros. Lumber Co. v. United States*, 651 F.3d 1343 (Fed. Cir. 2011) ...................................................................................7

*BMW of N. Am. LLC v. United States*, 926 F.3d 1291 (Fed. Cir. 2019)......11, 15, 16

*Diamond Sawblades Mfrs.' Coalition v. United States*, 986 F.3d 1351 (Fed. Cir. 2021)...................................................................6, 13

*Ellwood City Forge Co. v. United States*, No. 1:21-CV-00007, 2025 WL 1556014 (CIT June 2, 2025) ...................................................6

*Ferro Union, Inc. v. United States*, 23 C.I.T. 713, 719–20 (1999) ..........................7

*Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319 (Fed. Cir. 2010) ...................................................................................14

*Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375 (Fed. Cir. 2022) ...................................................................................12

*Mannesmanrohen-Werke AG v. United States*, 77 F. Supp. 2d 1302 (CIT 1999) ...................................................................................10

*Nippon Steel Corp. v. United States,* 337 F.3d 1373 (Fed.Cir.2003) .....................11

*POSCO v. United States*, 337 F. Supp. 3d 1265 (CIT 2018)...................................15

*Oman Fasteners, LLC v. United States*, 125 F.4th 1068 (Fed. Cir. 2025) ..............13

*Shandong Huarang Gen Group Corp. v. United States*, 27 CIT 1568 (2003)...................................................................................15

*Zhejiang DunAn Heitan Metal Co. v. United States*, 652 F.3d 1333 (Fed. Cir. 2011) ...................................................................................6

**Statutes** **Page(s)**

19 U.S.C. § 1677m(d) ......................................................................................10, 12

19 U.S.C. § 1677m(e) .............................................................................................6

Plaintiff-Appellant Chandan Steel Limited (Chandan) respectfully submits this reply brief.

# I. ARGUMENT

## A. Substantial evidence does not support Commerce's resort to facts available.

### 1. The absence of window sales for certain small diameter flanges does not justify application of total facts otherwise available.

The Government concedes that the December 9, 2020 comparison market sales database—CSLAR1HM03—included all sales in the comparison market covering the period of review, March 28, 2018 to September 30, 2019. Gov. Br. at 25; *see also* Appx1880-95 (SEQH 1- SEQH 4213 are 1.5 inch to 24 inch diameter flanges during POR and SEQH 4214-SEQH 4973 are 0.5 to less than 1.5 inch diameter flanges during POR).[1] As such, for many U.S. POR sales (i.e., sales from

---

[1] Chandan, whose employees are not native English speakers, explained that it understood "one half inch" in Commerce's questionnaire and first supplemental questionnaire to mean 1.5 inch. Commerce apparently appreciated the misunderstanding because in the second supplemental questionnaire, it clarified "that the size of the flanges covered by the scope of this investigation range from one-half (0.5) inch to twenty-four inches nominal pipe size," and asked Chandan to revise its U.S. and comparison market sales databases and cost of production database "to include all merchandise subject to the order . . . ." Appx1647. Notably, in making this request, Commerce did not include the instruction to report window period sales. That imprecision resulted in Chandan reporting comparison market sales of 0.5 inch to 24 inch diameter flanges only during the POR.

July 1, 2018 through July 31, 2019), all their window period sales are also in the POR.

To illustrate, the window period for a U.S. sale in January 2019 is October 2018 to March 2019 (three months before and two months after the January 2019 sale). All those comparison market sales are also in the POR, so there are no missing window period sales for this U.S. sale to warrant application of facts otherwise available. The same holds true for all U.S. POR sales from June 2018 through July 2019 as the CSLAR1HM03 included all comparison market sales, for all flange diameters, from March 2018 through September 2019.

As Chandan explained, and the Government does not contest, a U.S. sale at the end of the POR—i.e., a September 2019 U.S. sale—does not need window period sales outside of the POR (i.e., October 2019 and November 2019) unless there is no identical match in the comparison market in September 2019 or the three preceding months, June to August 2019, which are all months in the POR. *Compare* Opening Br. at 15-16 *with* Gov. Br. at 23-29.

Likewise, the Government does not contest that the first U.S. sale during the POR was in May 2018, and that no further window period sales are needed unless there is no identical May 2018 or April 2018 match in the comparison market, both months in the POR. *Compare* Opening Br. at 15 *with* Gov. Br. at 23-29; *see also* Appx1792 (SEQU 1 in CSLAR1US03).

There are no missing window period sales for 1.5 inch to 24 inch flanges. Indeed, the Government acknowledges that the September 11, 2020 comparison market sales database—CSLHM03—includes window period sales for 1.5 inch to 24 inch diameter flanges. Gov Br. at 4; *see also* Appx1064-71 (SEQH 4214-SEQH 4905).

In short, Commerce could have consolidated sequence numbers 4214 – 4905 from CSLHM03 (the window sales for 1.5 inch to 24 inch diameter flanges) with CSLAR1HM03 (all sales of 0.5 inch to 24 inch diameter flanges during the POR) and computed a gross unit price without any adjustments for a useable comparison market database. Case Br. at 7 n.1. Commerce, however, rejected this approach. And it did so not because combining databases is impossible. To the contrary, Commerce has combined sales databases in previous investigations. *See, e.g.*, Commerce Analysis Memo. for the Final Determination of the Antidumping Duty Investigation of *Certain Quartz Surface Products from India*: Antique Group, Inv. No. A-533-889, Apr. 27, 2020 (combining three U.S. market sales databases and correcting calculation of certain sales allowances).

Commerce instead eschewed combining databases because the data from the September 2023 database allegedly required "substantial revisions" through a supplemental questionnaire. Appx113. This is an exaggeration unsupported by the record. The alleged deficiencies with CSLHM03 concerned certain price

adjustments (e.g., discounts). Appx1647-48. Specifically, the sales database reported Field 17.0 gross unit price (GRSUPBDH) already net of discount/adjustment Fields 18.1, 19.1, 19.2, and 19.3. Chandan demonstrated, however, that the comparison market, sale-by-sale reporting of gross price before discount from Fields 17.0 to 19.3 already was reported in the record (Exhibit B-24) and reconciles with the reported Field 17.0 in the sales database. Appx3345; Appx3363-66; *see also* Appx3769 (noting sale-by-sale reporting of gross price before discount can be calculated by adding Fields 17 and 19.3),

Commerce itself admits that the deficiencies with the September 11, 2020 database, CSLHM03, which allegedly rendered the window period sales provided in CSLHM03 "not accurate," were minor and correctible:

> Chandan's arguments regarding its additional reporting issues, in essence, are observations that Commerce could correct Chandan's reporting. For instance, Chandan explains that gross unit price before discounts can be calculated by adding gross unit price and other discounts, while it asserts that Commerce could simply disregard Chandan's comparison market quantity discounts and U.S. sales duty refunds. We agree that such deficiencies could be addressed by Commerce; and we agree that, such reporting deficiencies, taken individually, would not warrant application of total AFA.

Appx113-14; Appx126.

There was no justification for Commerce to ignore the window period sales reported for 1.5 inch to 24 inch diameter flanges, and with the minor adjustments, combining with the December 8, 2020 database. Ultimately, the only sales data

4

not included in the record are comparison market sales for less than 1.5 inch diameter flanges for the five months <u>outside</u> of the period of review, i.e., the window period.  This, according to Commerce, renders Chandan's "entire comparison market database unusable" because "while it may be possible that {U.S.} sales can find an alternative match in the comparison market database, it is not necessarily the case that the match would have been the best match available and yield accurate results."  Gov. Br. at 29; Appx113-114.  That is rank speculation.

Commerce never even attempted to determine if the missing window sales for small diameter flanges were necessary to its sale matching methodology.  There simply was no justification for Commerce to disregard all sales data provided because certain small diameter U.S. sales in May and June 2018, and August and September 2019—i.e., 0.4% of all U.S. sales—might have involved Commerce considering a missing window period sale.   Specifically, Chandan demonstrated that for all but 0.4% of U.S. sales, using Commerce's methodology and running its CONNUM Concordance Program resulted in a comparison market match for each U.S. sale without the need to resort to missing window period sales, thereby allowing Commerce to perform its price-to-price margin calculation.  Appx3344-45; Appx3369-3725.

It was incumbent on Commerce to use the sales data provided and only if that data resulted in an actual gap in the record needed to calculate the dumping margin per Commerce's methodology— i.e., Commerce's sales matching methodology required use of a missing window sale—would resort to facts otherwise available have been appropriate as to those specific sales. 19 U.S.C. § 1677m(e); *see also Ellwood City Forge Co. v. United States*, No. 1:21-CV-00007, 2025 WL 1556014, at *6 (CIT June 2, 2025) ("Commerce does not have a blank check to disregard all of a party's information just because it finds a gap in the record"). It is well-established that facts available, and indeed adverse facts available, are only legally permissible where there is such a gap in the record as to the U.S. sale. *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011).

Any deficiency was limited to a discrete category of information: window sales for 0.5 inch to less than 1.5 inch diameter flanges. Such a partial gap in the record does not warrant total adverse facts available as to all sales. *Diamond Sawblades Mfrs. Coal. v. United States*, 986 F.3d 1351 (Fed. Cir. 2021). At most, Commerce should have applied a partial facts available as to those limited sales— i.e., 0.4% of U.S. sales here. *E.g.*, *Ellwood City Forge*, 2025 WL 1556014, at *7 ("Commerce appropriately limited its drawing of an adverse inference to the data type affected by the error," i.e., the subset of inaccurate mill test certificates);

*Ferro Union, Inc. v. United States*, 23 CIT 713, 719–20 (1999) (deficiencies from imperfectly reported comparison sales database could be addressed by use of partial adverse facts available).

### 2. Alleged cost reporting issues do not warrant affirmance.

The Government contends that cost-reporting issues found by Commerce justify affirmance even though "the trial court did not reach these issues." Gov. Br. at 30. Chandan did not discuss the issues on appeal because the CIT based its decision solely on the comparison market sales database and specifically declined to resolve the other challenges Chandan raised in its briefing before the CIT. The CIT should resolve those issues in the first instance. *E.g.*, *Almond Bros. Lumber Co. v. United States*, 651 F.3d 1343, 1355 (Fed. Cir. 2011) (declining to decide in the first instance an alternative basis for affirmance presented by the government and instead leaving the question for the CIT's consideration on remand). Regardless, the Government's arguments on both issues lack merit.

First, Commerce contends Chandan failed to provide calculation worksheets for CONNUM C and CONNUM D, and incomplete weighted-average calculation worksheets for CONNUM A and CONNUM B. Gov. Br. at 31. This is incorrect and not supported by substantial evidence. Chandan explained to Commerce in its now new facts filing in March 2021 that record exhibits—namely, Exhibits D-16, D-17, D-18, D-19, D-20, D-20.1, D-53, and D-56—provided all CONNUM cost

build-ups requested by Commerce and linked those exhibits to the cost of production database fields.  Appx3345-46.  Chandan also included Exhibits CR-5 and CR-6, which Commerce accepted, that summarize previously submitted cost exhibits for CONNUMs A, B, C, and D, and included explanations as to calculations provided in spreadsheet formulas.  Appx3726-29.

Further, Exhibits CB-1 to CB-4, which summarized information already in the record, provided a compilation of cost build-ups for CONNUMs A to D, and the weighted-average cost of production reported in those exhibits reconciles to the cost database CSLAR1COP03.  Appx3771-72.  All the above was noted to the CIT, which did not find any fault as to.  Appx25-26.

Chandan also detailed its methodology to calculate raw material cost, labor cost, power cost, variable overheads and fixed overheads in its initial Section D questionnaire response.  Appx3772-77.  Chandan explained how it reported the cost of raw materials calculations for each cost element in the reported cost of production database.  Appx3774-76; Appx325-32.

Second, Commerce contends Chandan "failed to support its assertion that products whose production was based on a technical drawing could have different-than-reported theoretical weights due to tolerances and/or other technical parameters."  Gov. Br. at 32.  This again is incorrect and not supported by substantial evidence.

Chandan submitted product drawings at Exhibit D-34 (showing dimensional tolerances) and explained that it obtained the product weights from the submitted product drawings based on "reference to input weight, forged weight and output weight among other technical parameters." Appx3347-48. Commerce contends that the theoretical weights reported for products in the cost database do not fully match the theoretical weights in the product drawings. Appx117. But Commerce fails to address that the product drawings contain product tolerances and product dimensions that define the input weight and output weight to which Chandan manufactures its flanges. Appx3347-48; Appx3778-79; Appx2118-34. Chandan explained that its cost reporting database used the planned dimensions within the tolerances identified in the product drawings, per its ordinary course of business cost reporting, and thus represented the correct weights for flanges manufactured during the POR. Appx3347-48; Appx3779-80; Appx1295-98.

Commerce erroneously compared theoretical weights without considering dimensional tolerances indicated in product drawings. Chandan documented to Commerce, including Exhibit CB-8, that the raw material cost allocation of CONNUMs A and B accurately reported the weights for over 99% of the production among these CONNUMs considering the dimensional tolerances in Exhibit D-34. Appx3347; Appx3780-81. All the above was noted to the CIT which did not find any fault as to. Appx25-26.

Chandan notes that Commerce did not request clarification of product weight in any supplemental questionnaire, thus depriving Chandan of an opportunity to address any concern before the preliminary decision. For that reason, too, Commerce may not decide adversely to Chandan as to this issue, since Commerce failed to provide notice of any concern and opportunity to remedy. 19 U.S.C. § 1677m(d).

**B. Commerce's use of an adverse inference is not supported by substantial evidence and is not in accordance with law.**

The Government asserts that Commerce "reasonably determined that Chandan failed to cooperate by not acting to the best of its ability to comply with Commerce's request for information, making it appropriate to use an adverse inference in selecting from among the facts otherwise available, pursuant to 19 U.S.C. § 1677e(b)." Gov. Br. at 35. According to the Government, "Chandan's inattentiveness more than sufficiently demonstrate that Chandan did not put forth maximum efforts." *Id.* The Government is incorrect. Even if appropriate to use facts otherwise available, Commerce failed to adhere to the framework for employing adverse inferences.

19 U.S.C. § 1677e(b) requires Commerce to "identify why {the} errors {are something} more than inadvertent omissions," and explain why any alleged omissions were "a deliberate evasion, rather than an oversight." *Mannesmanrohen-Werke AG v. United States*, 77 F. Supp. 2d 1302, 1314 (CIT

1999).  Indeed, "{a}n adverse inference may not be drawn merely from a failure to respond."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003).  "Ability" under the statute goes to the "physical, mental, or legal power to perform."  *Id.*  Commerce must analyze the claimed deficient response considering "the respondent's overall conduct, the importance of the information, the particular time pressures of the investigation, and any other information that bears on the issue of whether the deficiency was an excusable inadvertence or a demonstration of disregard for its responsibilities in the investigation."  *Id.*  This analytical framework requires Commerce to consider the totality of the circumstances.  *BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1302 (Fed. Cir. 2019).

Commerce failed to consider fully the circumstances that led to Chandan's reporting issues.  For example, Chandan is a small company, with limited professional staff, limited as to understanding all aspects of a complex and demanding U.S. antidumping law, and not fully proficient in English.  This also was Chandan's first experience with a Commerce administrative review in eighteen years.  Appx4925-26; Appx3823-24; Appx3814-15.

Compounding the difficulties for Chandan was the COVID-19 pandemic, which led to restricted staff, repeated statewide and/or nationwide lockdowns, and multiple members of the Chandan team suffering from COVID-19 infections.  *E.g.*, Appx4937-38; Appx5130-31; Appx5216-18; Appx3348-49 (No New Facts).

Commerce also ignores that it failed to notify Chandan of perceived deficiencies as required by 19 U.S.C. § 1677m(e).  For example, Commerce never requested clarification of product weight in any supplemental questionnaire, thereby denying Chandan the opportunity to address any Commerce concern.  This led Commerce to erroneously compare theoretical weights in the cost reporting without considering the dimensional tolerances indicated in the submitted product drawings, as cited above.  Ultimately, Commerce had an obligation to inform Chandan of a reporting deficiency and the opportunity to cure.  19 U.S.C. § 1677m(d).

Commerce cannot lawfully invoke § 1677e(a) unless it tried to use the data, found it objectively unusable, and gave a meaningful chance to correct the issue.  Commerce never proved that the data was unusable or that there was an actual gap, and Chandan was not given an adequate opportunity to correct the minor deficiency.  Adverse inferences are not warranted where—as occurred here, Commerce fails to provide a respondent an opportunity to explain a perceived discrepancy in reported information.  *Hitachi Energy USA, Inc. v. United States*, 34 F.4th 1375, 1385 (Fed. Cir. 2022), *opinion modified on denial of reh'g*, No. 2020-2114, 2022 WL 17175134 (Fed. Cir. Nov. 23, 2022).

**C.**     **Commerce's use of a rate from a prior segment of the proceeding is not supported by substantial evidence and is not in accordance with law.**

The Government asserts that the 145.25 percent adverse rate applied to Chandan during the administrative review is justified by the Tariff Act of 1930. Gov. Br. at 40. And the Government accuses Chandan of ignoring the statutory authority permitting Commerce to "use a dumping margin from any segment of the proceeding under the applicable order," while not requiring Commerce "to estimate what the margin would have been if the interested party had cooperated, or to demonstrate that the margin used reflects an alleged commercial reality of the interested party." Gov. Br. at 40-41. This criticism, however, is beside the point.

While Commerce <u>may</u> use a dumping margin calculated in another segment, its discretion is not unbridled. As Chandan explained, and the Government does not dispute, this Court held that while Commerce has some "discretion in selecting among adverse rates," it "must be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance." *Diamond Sawblades*, 986 F.3d at 1367; *see also Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1086 (Fed. Cir. 2025) (Commerce must use its power "within the constraints of the statute and record"). Indeed, an adverse rate "is to provide respondents with an incentive to cooperate,

13

not to impose punitive, aberrational, or uncorroborated margins." *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010).

The Government contends that Chandan does not demonstrate that the AFA margin applied is punitive. Gov. Br. at 41. The Government misses the mark. Imposing a punitive rate is precisely what occurred here. As Chandan explained, applying a 145.25 percent adverse rate in the first review to a respondent who received a non-AFA rate of 19.16 percent during the investigation is not deterrence—it is punitive. Opening Br. at 20-21.

The Government claims that the 145.25 percent margin was "corroborated" during the investigation "with reference to Chandan's calculated margin in the investigation." Gov. Br. at 41. But that adverse rate was based on the unverified petitioner allegation and a dumping margin on just an aberrant U.S. sale of Chandan in the original investigation, ignoring that the average dumping margin found to Chandan sales was 19.16 percent. Appx137. The 145.25% rate is over 7.5 times the weighted average dumping margin that Commerce found for Chandan for all Chandan sales in the original investigation. Commerce never explains how a rate 7.5 times greater than the prior verified weighted-average dumping margin for the full body of all Chandan sales for a 12 month period (versus one sale) is not punitive.

Application of a particular AFA rate to a respondent requires more than a recitation of a respondent's alleged deficiencies that led to application of AFA. Commerce's evaluation must be "a fact-specific inquiry and provide {} reasons for selecting the highest rate out of all potential . . . rates in a particular case" if the highest rate is used. *POSCO v. United States*, 337 F. Supp. 3d 1265, 1278-79 (CIT 2018). What Commerce failed to do—and what it was required to do—was explain "what range of rates Commerce considered . . . or why this particular {review} merited application of the highest rate." *Id.* In other words, Commerce's evaluation is not to be a mere pro forma recitation of factors and selection of a rate; rather, the statute imposes a sliding scale, or proportionality factor, based on the severity of the respondent's conduct and other relevant circumstances. *Id.* Indeed, selection of an unusually high AFA rate may be warranted to deter serious misconduct, including deliberate falsity and intentional concealment. *BMW*, 926 F.3d at 1300–01; *see also, e.g.*, *Shandong Huarong Gen. Group Corp. v. United States*, 27 CIT 1568, 1583 (2003) (respondents misrepresented facts regarding transactions, identifying as their own the sales of others, to affect the dumping margin). Here, there are no findings that Chandan engaged in fraud or outright refusal to participate in the review.

This Court, moreover, has vacated AFA dumping margins when Commerce did not consider "how the procedural irregularities surrounding the" Commerce

proceeding affected respondent's "level of culpability" to ensure that any dumping margin imposed is "not unduly punitive." *BMW*, 926 F.3d at 1302. Here, Commerce's selection of the highest AFA rate effectively was automatic. Appx137-38 (noting general practice "to select, as an AFA rate, the higher of (1) the highest dumping margin alleged in the petition, or (2) the highest calculated rate of any respondent in the proceeding"). In so doing, Commerce fell short of this Court's admonition that Commerce "consider the totality of the circumstances in selecting an AFA rate," and that "use of the highest rate . . . will depend upon the facts of a particular case." *BMW*, 926 F.3d at 1300.

Commerce failed to provide any explanation for why the highest rate is an appropriate deterrence without being punitive under the circumstances of this review. As such, the use of the 145.25% rate is unsupported by substantial evidence and not in accordance with law.

## II.    CONCLUSION

For the reasons in this reply and Chandan's Opening Brief, the Court should reverse the CIT's judgment, vacate Commerce's final determination, and remand.

Respectfully submitted,

*/s/ Jeremy William Dutra*
Jeremy William Dutra, Esq.

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037

202-626-6237
jeremy.dutra@squirepb.com

*Counsel for Chandan Steel Limited*

Dated: June 4, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2025-1291

**Short Case Caption:** Chandan Steel Ltd. v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✔] the filing has been prepared using a proportionally-spaced typeface and includes 3,584 words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 06/04/2025

Signature: /s/ Jeremy William Dutra

Name: Jeremy William Dutra